Slip Op. 19-92

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CHANGZHOU TRINA SOLAR ENERGY CO., LTD. ET AL.,** | |
| Plaintiffs and Consolidated Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before: Claire R. Kelly, Judge |
| Defendant, | Consol. Court No. 17-00199 |
| and | |
| **SOLARWORLD AMERICAS, INC. and CHANGZHOU TRINA SOLAR ENERGY CO., LTD.,** | |
| Defendant-Intervenors and Consolidated Defendant-Intervenor. | |

## OPINION

[Sustaining the U.S. Department of Commerce's remand redetermination in the first administrative review of the antidumping duty order covering certain crystalline silicon photovoltaic products from the People's Republic of China.]

Dated: July 25, 2019

Jonathan Michael Freed, Robert George Gosselink, and Jarrod Mark Goldfeder, Trade Pacific, PLLC, of Washington, DC, for plaintiff, defendant-intervenor, and consolidated defendant-intervenor Changzhou Trina Solar Energy Co., Ltd., and plaintiffs Trina Solar (Changzhou) Science & Technology Co., Ltd. and Trina Solar (U.S.) Inc.

Timothy C. Brightbill and Laura El-Sabaawi, Wiley Rein, LLP, of Washington, DC, for consolidated plaintiff and defendant-intervenor SolarWorld Americas, Inc.

Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were Reginald T. Blades, Jr., Assistant Director, Jeanne E. Davidson, Director, and Joseph H. Hunt, Assistant Attorney General.

Consol. Court No. 17-00199                                                                                                   Page 2

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand redetermination filed pursuant to the court's order in Changzhou Trina Solar Energy Co. v. United States, 43 CIT __, 359 F. Supp. 3d 1329 (2019) ("Changzhou Trina I"). See Final Results of Remand Redetermination, Apr. 25, 2019, ECF No. 78-1 ("Remand Results").

In Changzhou Trina I, the court determined that Commerce's decision not to offset the Ex-Im Bank Export Buyer's Credit Program in the first administrative review of the antidumping duty ("ADD") order covering certain crystalline silicon photovoltaic products from the People's Republic of China ("PRC" or "China") was contrary to law and ordered Commerce to recalculate Trina's U.S. selling prices on remand.[1] Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1337–42, 1344; see also Certain Crystalline Silicon Photovoltaic Prods. from the [PRC], 82 Fed. Reg. 32,170 (Dep't Commerce July 12, 2017) (final results of ADD admin. review and final determination of no shipments; 2014–2016) ("Final Results") and accompanying Issues & Decision Mem. for the Final Results of ADD Admin. [Review]: Certain Crystalline Silicon Photovoltaic Prods. from the [PRC]; 2014–2016, A-570-010, (July 5, 2017), ECF No. 19-3 ("Final Decision Memo"); Certain Crystalline Silicon Photovoltaic Prods. from the [PRC], 80 Fed. Reg. 8,592, 8,593–95 (Dep't Commerce Feb. 18, 2015) (ADD order).

---

[1] The collective entity Commerce refers to as "Trina" encompasses Changzhou Trina Solar Energy Co., Ltd., Trina Solar (Changzhou) Science and Technology Co., Ltd., Yangcheng Trina Solar Energy Co., Ltd., Turpan Trina Solar Energy Co., Ltd., and Hubei Trina Solar Energy Co., Ltd. Remand Results at 1 n.2. The court adopts the shorthand in this opinion.

On remand and "under respectful protest," Commerce increased Trina's U.S. selling prices by the amount countervailed to offset the Ex-Im Bank Export Buyer's Credit Program.  See Remand Results at 1, 5.  As a result, Trina's weighted-average dumping margin decreased from 9.61 percent to 3.42 percent.  See id. at 6–7.  The separate rate respondents' rate similarly changed.  Id. at 7.  For the following reasons, the court sustains the Remand Results.

## BACKGROUND

The court assumes familiarity with the facts of this case as discussed in the prior opinion, see Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1332–33, and here recounts the facts relevant to the court's review of the Remand Results.  The first administrative review covered subject imports entered during the period of July 31, 2014, through January 31, 2016.  See Initiation of [ADD] and Countervailing Duty Admin. Reviews, 81 Fed. Reg. 20,324, 20,335 (Dep't Commerce Apr. 7, 2016).  Commerce selected Changzhou Trina Solar Energy Co., Ltd./Trina Solar (Changzhou) Science & Technology Co., Ltd. as the sole mandatory respondent for individual review.  See Resp't Selection Mem. [for 2014–2016 ADD Admin. Review] at 5, PD 94, bar code 3472551-01 (May 24, 2016).[2]  Pertinent here, in the parallel countervailing duty ("CVD") investigation, Commerce imposed CVDs against the mandatory respondents[3] to countervail the Ex-Im

---

[2] The court's citations to administrative record documents are to numbers Commerce assigns to such documents in its public and confidential administrative record indices; here, located on the docket at ECF Nos. 19-4–5 and 79-2–3.

[3] One of the mandatory respondents in the parallel CVD investigation was Changzhou Trina Solar Energy Co., Ltd. and its cross-owned affiliate Trina Solar (Changzhou) Science & Technology Co., Ltd.  CVD Investigation Final Decision Memo at 2.

Consol. Court No. 17-00199                                                                                      Page 4

Bank Export Buyer's Credit Program.  See [CVD] Investigation of Certain Crystalline Silicon Photovoltaic Prods. From the [PRC], 79 Fed. Reg. 76,962 (Dep't Commerce Dec. 23, 2014) (final affirmative [CVD] determination) and accompanying Issues & Decision Mem. for the Final Determination in the [CVD] Investigation of Certain Crystalline Silicon Photovoltaic Prods. from the [PRC] at 30, C-570-011, (Dec. 15, 2014) ("CVD Investigation Final Decision Memo") available at http://ia.ita.doc.gov/frn/summary/prc/2014-30071-1.pdf (last visited July 22, 2019).  In the final determination, Commerce declined to increase Trina's U.S. selling prices (which would reduce Trina's antidumping duty) by the amount countervailed to offset the Ex-Im Bank Export Buyer's Credit Program.  See Final Decision Memo at 9–10.  Specifically, Commerce stated that it was not required to adjust Trina's U.S. selling prices because it had not found the Ex-Im Bank Export Buyer's Credit Program to be contingent on export performance and thus had not determined the program to be an export subsidy.  Id.  For the Final Results, Commerce calculated a weighted-average dumping margin of 9.61 percent for the mandatory respondent and assigned the same margin to the separate rate respondents.  Final Results, 82 Fed. Reg. at 32,171.

In Changzhou Trina I, the court sustained in part and remanded in part Commerce's Final Results.[4]  See Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1344.  The court determined that Commerce's refusal to increase Trina's U.S. selling

---

[4] Specifically, in Changzhou Trina I, the court sustained Commerce's selection of surrogate values for aluminum frames, module glass, and financial ratios.  Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1334–37, 1344.  The court also sustained Commerce's decisions to include import data with reported quantities of zero in the surrogate value calculations and to deny offsetting respondent's U.S. indirect selling expenses by the debt restructuring income reported by its U.S. sales affiliate.  Id. at __, 359 F. Supp. 3d at 1342–44.

prices for the amount countervailed to offset the Ex-Im Bank Export Buyer's Credit Program was contrary to law. See id. at __, 359 F. Supp. 3d at 1337–42, 1344. The court directed the agency to recalculate Trina's U.S. selling price. See id. at __, 359 F. Supp. 3d at 1342, 1344.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012)[5] and 28 U.S.C. § 1581(c) (2012). The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

In the Remand Results, Commerce, "under protest," increased Trina's U.S. selling prices by the amount countervailed in the parallel CVD investigation for the Ex-Im Bank Export Buyer's Credit Program. See Remand Results at 1, 5. SolarWorld Americas, Inc. ("SolarWorld") argues that Commerce's decision, on remand, to offset Trina's U.S. selling prices by the countervailed subsidy program is contrary to law and unsupported by

---

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Consol. Court No. 17-00199                                                                                            Page 6

substantial evidence.  See [SolarWorld's] Comments [Remand Results] Pursuant Ct. Order at 2–4, May 28, 2019, ECF No. 84 ("SolarWorld's Comments").  Plaintiffs and Defendant request the court to sustain the Remand Results.  See [Pls.'] Comments [Remand Results] at 2, May 28, 2019, ECF No. 83; Def.'s Resp. Comments [Remand Results] at 3, June 27, 2019, ECF No. 87.  For the reasons that follow, Commerce's decision to increase Trina's U.S. selling prices to account for the CVD amount imposed for the Ex-Im Bank Export Buyer's Credit Program complies with the court's remand order and is in accordance with law.

To impose a CVD, Commerce must find that an exporter both benefited from a subsidy and that the subsidy was specific.  19 U.S.C. § 1677(5).  A "countervailable subsidy" is a financial contribution, price support, or funding mechanism, provided by an "authority," that confers a benefit to its recipient.  19 U.S.C. § 1677(5)(B).  A countervailable subsidy must be specific, meaning it is an (i) import substitution subsidy, (ii) export subsidy, or (iii) domestic subsidy that is specific, in law or fact, to an enterprise or industry within the jurisdiction of the authority providing it.  19 U.S.C. § 1677(5)(A); 19 U.S.C. § 1677(5A)(A)–(D).  An export subsidy is defined as "a subsidy that is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more conditions."  19 U.S.C. § 1677(5A)(B).  Where goods are subject to both antidumping and countervailing duties, "[t]he price used to establish export price and constructed export price shall be— (1) increased by . . . (C) the amount of any countervailing duty imposed on the subject merchandise under part I of this subtitle to offset an export subsidy[.]"  19 U.S.C. §

1677a(c)(1)(C). In the final determination, Commerce refers to the export price and constructed export price as the "U.S. selling price." Final Decision Memo at 9.

Where Commerce has difficulty accessing and verifying the information it needs to satisfy the statutory elements for imposing a CVD it may, subject to 19 U.S.C. § 1677m(d), use facts otherwise available to reach its final determination. Specifically, Commerce may use facts available when "necessary information is not available on the record," a party "withholds information that has been requested by [Commerce]," fails to provide the information timely or in the manner requested, "significantly impedes a proceeding," or provides information Commerce is unable to verify. 19 U.S.C. § 1677e(a). Further, under certain circumstances, such as a party's failure to comply to the best of its ability with a request for information, Commerce may "use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). This two-step process is generally referred to by the shorthand "adverse facts available" or "AFA."

However, and as explained in <u>Changzhou Trina I</u>, the AFA process does not relieve Commerce of its obligation to affirmatively find that the elements of a statute have been satisfied. <u>See</u> <u>Changzhou Trina I</u>, 43 CIT at __, 359 F. Supp. 3d 1338–41. To impose a CVD, Commerce must find that an exporter benefited from a specific subsidy. <u>See</u> 19 U.S.C. § 1671; 19 U.S.C. § 1677(5), (5A). That Commerce resorts to AFA in determining an exporter benefited from a specific subsidy does not mean that Commerce did not make the statutorily required findings.

In the Remand Results, Commerce increased Trina's U.S. selling prices by the amount countervailed to offset the Ex-Im Bank Export Buyer's Credit Program "under protest[.]" See Remand Results at 1, 5. Commerce's actions on remand comply with the court's order in Changzhou Trina I that Commerce recalculate Trina's U.S. selling prices to account for the amount countervailed. See Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1332, 1337–42, 1344. Commerce's Remand Results are also in accordance with law because it is reasonably discernible from Commerce's description of the Ex-Im Bank Export Buyer's Credit Program in the parallel CVD investigation that Commerce found that program to be an export subsidy because the benefits it provided were contingent upon export. See CVD Investigation Final Decision Memo at 30 (finding that through the Export Buyer's Credit Program the "[Ex-Im Bank] provides loans at preferential rates for the purchase of exported goods from the PRC"). Commerce did not resort to facts available or adverse inferences when describing the Export Buyer's Credit Program. Rather, Commerce explicitly stated that it relied on AFA to determine that respondents used the Export Buyer's Credit Program, not that the program was specific. See id. at 91–94. Further, Commerce's descriptions of the Ex-Im Bank Export Buyer's Credit Program do not suggest that it considered the program to be anything other than an export subsidy. See Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1339. Given that 19 U.S.C. § 1677a(c)(1)(C) uses the mandatory "shall" to direct Commerce's actions as to offsets when Commerce imposes a countervailing duty and here Commerce imposed such a duty, the increase to Trina's U.S. selling prices by the amount countervailed to offset the export subsidy is in accordance with law.

In making its determination under protest, Commerce argues that the CVD investigation on solar products is not before the court and that determinations made in distinct proceedings are based on segment-specific information and thus do not necessarily inform determinations in other segments of the same proceedings. Remand Results at 5 n.24 (citing e.g., Hyundai Steel Co. v. United States, 41 CIT __, __, 279 F. Supp. 3d 1349, 1371–72 (2017)). Commerce's protest is misplaced because the statutory directive that Commerce "shall" increase the price underlying the export price or constructed export price of the subject merchandise by the amount of any CVD imposed on that merchandise to offset an export subsidy, 19 U.S.C. § 1677a(c)(1)(C), necessarily requires it to look back at a CVD imposed in a countervailing duty proceeding separate from the antidumping proceeding in which that CVD amount is being offset. In Changzhou Trina I, the court explained that it was reasonably discernible from Commerce's descriptions of the export buyer's credit program in relevant CVD proceedings that the program was specific because the benefits it provided were contingent upon export. Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1337–42; see also CVD Investigation Final Decision Memo at 30, 91–94. Such a finding is necessarily within the court's scope of review under 19 U.S.C. § 1516a(b)(1)(B)(i).

SolarWorld argues that Commerce's high-level description of the subsidy program as generally relating in some way to "exported goods" does not constitute a specific determination that the program in question was contingent on export performance. See SolarWorld's Comments at 3–4. SolarWorld further argues Commerce lacked information necessary to find the Ex-Im Bank Export Buyer's Credit Program to be an export subsidy

because the Government of China failed to provide relevant information during the CVD investigation.  See SolarWorld's Comments at 3–4.  In the CVD Investigation Final Decision Memo, Commerce states "this program, the Export-Import Bank of China (Ex-Im Bank) provides loans at preferential rates for the purchase of exported goods from the PRC[,]" but then adds that "the Department was not able to verify the reported non-use" of this program.  See CVD Investigation Final Decision Memo at 30.  Commerce implicitly found the program was an export subsidy; no party challenged its characterization as an export subsidy.  The only challenge in the parallel investigation to Commerce's determination about the program was whether Commerce could, as it did, rely on an adverse inference to select among the facts available to determine that respondents used the Ex-Im Bank Export Buyer's Credit Program.  See CVD Investigation Final Decision Memo at 30, 91–94.  Commerce did not use AFA to conclude the Ex-Im Bank Export Buyer's Credit Program was contingent on export performance.[6]

---

[6] Commerce challenges Changzhou Trina I's citation to and reliance on the results of a first administrative review of a CVD order on crystalline silicon photovoltaic cells, whether or not assembled into modules from the PRC.  See Remand Results at 5 n.24; Changzhou Trina I, 43 CIT at __, 359 F. Supp. 3d at 1339 (citing Issues & Decision Mem. for the Final Results of the [CVD] Admin. Review: Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the [PRC] at 33, C-570-980, (July 7, 2015) available at http://ia.ita.doc.gov/frn/summary/prc/2015-17241-1.pdf (last visited July 22, 2019) ("CVD Review")).  The cited review does cover a different product; however, it also demonstrates Commerce's determination regarding the same program at issue here.  In that review, Commerce similarly relied on AFA to determine respondents' use of the Ex-Im Bank Export Buyer's Credit Program, but not whether the program was specific because it was contingent on export performance.  CVD Review at 33 ("program is specific because it is contingent upon export performance, within the meaning of section 771(5A)(A)–(B) of the [Tariff] Act [of 1930, as amended, 19 U.S.C. § 1677(5A)(A)–(B)].").  Similarly, here, Commerce relied on AFA to determine use and nowhere in its final determination or parallel CVD investigation does Commerce indicate that this program is anything other than an export subsidy or that it resorted to AFA to determine specificity.

## CONCLUSION

For the foregoing reasons, the <u>Remand Results</u> comply with the court's order in <u>Changzhou Trina I</u> and are in accordance with law, and are therefore sustained. Judgment will be entered accordingly.

                                                    /s/ Claire R. Kelly
                                                  Claire R. Kelly, Judge

Dated: July 25, 2019
       New York, New York